08 CV 4912

James H. Power
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
GLORY WEALTH SHIPPING PTE LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| GLORY WEALTH SHIPPING PTE LTD., | |
| Plaintiff, | 08 Civ. _____ |
| -against- | **VERIFIED** |
| NIAGARA MARITIME S.A., | **COMPLAINT** |
| Defendant. | |

Plaintiff, Glory Wealth Shipping Pte Ltd., ("Glory" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Niagara Maritime S.A. ("Niagara" or "Defendant"), alleges, upon information and belief, as follows:

1.     This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     At all times material herein, Glory is and was a business entity organized and existing under the laws of Singapore having an address at 9 Temasek Boulevard 07-00, Suntec City Tower 2, 038989, Singapore.

3.     At all times material herein, defendant Niagara is, and was, a foreign corporation or business entity organized and existing under the laws of a foreign country believed to be Cyprus.  Upon information and belief at all material times herein, Niagara maintained its principal place of business in Greece or in Cyprus and upon information and belief operates out of the offices of Transmed Shipping Ltd., 152 Eleftheriou Venizelou Ave., Kastri, 14671, Athens, Greece.

4.     On or about October 19, 2007, Glory and Niagara entered into a time charter party ("Charter") for the vessel M.V. GOOD LUCK ("Vessel").

5.     The Charter is governed by English law, which routinely allows for costs, including a reasonable allowance for attorney's fees.  The Charter specifies London arbitration.

6.     The Charter was for a period of minimum 4 months to a maximum of 6 months worldwide trading.

7.     The Charter included the standard New York Produce Exchange charter party terms.

8.     Excluding certain weather conditions, CLAUSE 29 of the Additional Clauses to the Charter represented and warranted the Vessel's speed  to be "[a]bout 13 knots ballast and about 12 knots laden on about 53 metric tons IFO 380 CST (RMG35) plus about 2 metric tons MDO (DMB)"

9.     Under the terms expressly set out in CLAUSE 1 of the New York Produce Exchange form Charter Niagara was to, ". . . maintain her class and keep the vessel in a thoroughly efficient state in hull . . . "

2

10.    Under the terms of the Charter the owner, Niagara, was required to keep the Vessel's hull free of fouling, including, but not limited to, underwater growth for the period of the Charter.

11.    In response to the vessel's failure to meet the warranted speed under the Charter, an underwater inspection of the Vessel's hull was conducted.  The inspection revealed that the Vessel's hull was fouled with marine growth.

12.    Samples of the marine growth were taken from the Vessel's hull on or about March 18, 2008 at Richards Bay, South Africa shortly after the vessel arrived from Sepetiba, Brazil.  The M.V. GOOD LUCK had been berthed at the Port of Sepetiba, Brazil for the month of February 2008.

13.    Three barnacle samples were taken, one each from the mid-upper loading band as well as the starboard and portside sea chests.

14.    The Oceanographic Research Institute ("ORI") was commissioned to investigate the age and community structure of the barnacle fouling community on the hull of the M.V. GOOD LUCK.

15.    The scientific analysis performed by ORI identified four barnacle species in the samples removed from the Vessel's hull on March 18, 2008: Megabalanus coccopoma, Balanus trigonus, Balanus amphitrite amphitrite and Tesseropora roea.

16.    According to the scientific analysis by ORI, it was estimated that a significant portion of the barnacles tested pre-dated the Vessel's port call in Sepetiba, Brazil in February of 2008 and ORI estimated that the largest of the Megabalanus coccopoma barnacles settled on the Vessel's hull between July 2007 and September 2007.

17.    As a result of underwater marine growth pre-existing the Charter, as well as further accumulation during the Charter, and possibly engine and equipment failure, the Vessel failed to meet the speed and fuel consumption warranted by the Charter.

18.    The Vessel underperformed on three voyages:

    i)    Voyage from Esperance, Australia to Dalian, China;

    ii)    Voyage from Sepetiba, Brazil to Richards Bay, South Africa;

    iii)    Voyage from Richards, Bay, South Africa to Qingdao, China.

19.    On the Voyage from Esperance, Australia to Dalian, China, the Vessel lost a total of 14.1 hours due to underperformance, and over-consumed 31.13 MT of Fuel Oil and 1.17 MT of Diesel Oil.

20.    On the Voyage from Sepetiba, Brazil to Richards Bay, South Africa the Vessel lost a total of 153.8 hours due to underperformance, and over-consumed 270.32 MT of Fuel Oil and 2.02 MT of Diesel Oil.

21.    On the Voyage from Richards, Bay, South Africa to Qingdoa, China the Vessel lost a total of 23.0 hours due to underperformance, and over-consumed 49.59 MT of Fuel Oil and 2.09 MT of Diesel Oil.

22.    Having made a deduction from hire in relation to the vessel's underperformance which was disputed by Niagara, Glory elected to pay the full hire due to Niagara whilst reserving its rights to claim in relation to underperformance at a later stage.

23.    Despite the underperformance of the Vessel, Glory ultimately paid the full amount of hire on April 21, 2008, which covered any outstanding hire as well as future hire up to the anticipated redelivery date of April 24, 2008.

24.    At the time of Glory's full hire payment by wire transfer on April 21, 2008 in the amount of $1,143,814.31 of which receipt was acknowledged by Niagara, the Vessel was awaiting entry into Qingdao port to discharge her cargo.

25.    Notwithstanding the full up-to-date payment of hire by Glory, Niagara refused to berth the vessel and discharge cargo despite Glory's instructions to do so thereby again breaching the terms of the Charter.

26.    Niagara, refusing to resume service of the Vessel and to berth the Vessel and unload cargo as per Charterer's instruction, further demanded additional payments in the form of advance hire through April 27, 2008 payment for hull cleaning costs and other expenses. Niagara also demanded that Glory provide an indemnity in respect of any arrest by third parties.

27.    In order to regain use of the Vessel so that cargo could be discharged without further delay and to minimize potential damages for cargo damages and/or delay, Glory had no choice but to make further payment, under protest, in the amount of $582,104.64.

28.    Only after extracting this additional payment from Glory did Niagara agree to place the Vessel back in service.   However, as a result of Niagara's refusal to comply with the express terms of the Charter and to resume service of the Vessel, the M.V. GOOD LUCK missed her turn at the discharge berth causing further delay and loss of time.

29.    The time lost due to Niagara's refusal to berth the Vessel and discharge cargo was about 5 days, 1 hour and 33 minutes (from 1730 Local Time on April 18, 2008 to 1833 Local Time on April 23, 2008).

30.    By reason of Niagara's breach of the Charter, Glory has suffered damages in the amount of $1,980,465.78 calculated as follows:

      i)    Underperformance claim for 190.9 hours: $1,137,246.98

      ii)    Bunker over consumption: $119,110.00

      iii)    Off-Hire due to Niagara's wrongful suspension: $724,108.80

      TOTAL: $1,980,465.78

31.    Despite due demand, Niagara have refused to pay Glory the amounts due and owing under the Charter.

32.    Attempts by Glory to obtain security from Niagara have been unsuccessful as was Glory's attempt to arrest the Vessel.

33.    Plaintiff Glory has initiated several actions against Niagara and the Vessel M.V. GOOD LUCK in South Africa and in Singapore and Plaintiff Glory will soon commence arbitration proceedings against Niagara in accordance with the terms of the Charter.

34.    Upon information and belief it will take three years to bring this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| | |
|---|---|
| Interest: | $458,357.70 (3 years at 7% annum compounded quarterly from May 1, 2008) |
| Arbitrator's fees | $100,000.00 |
| Attorneys' fees | $300,000.00 |

Total Principal Claim: _____ $1,980,465.78

Total Sought:                **$ 2,838,823.40_____**

35.    Defendant Niagara is not found within the Southern District of New York but does have assets, goods or chattels within the jurisdiction, to wit: funds or accounts held in the name of Niagara Maritime S.A. with, upon information and belief, the following financial institutions:  Deutsche Bank Trust Company Americas; Bank of America, N.A.; The Bank of New York; Citibank, N.A.; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; China Trust Bank; Industrial Bank of Korea; Shin Han Bank; Nara Bank; or any other financial institution within the Southern District of New York.

**WHEREFORE**, Glory Wealth Shipping Pte Ltd., prays:

1.    That a summons with process of attachment and garnishment may issue against the defendant, Niagara Maritime S.A.; and if defendant cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and other property of Niagara Maritime S.A. with the financial institutions noted above in paragraph 35, may be attached in an amount sufficient to answer plaintiff's claim;

2.    That defendant Niagara Maritime S.A. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.      That judgment be entered in favor of Glory Wealth Shipping Pte Ltd. against Niagara Maritime S.A. in the amount of US $2,838,823.4 (including estimated interest, expenses and attorneys' fees); and,

4.      That this Court grant Glory Wealth Shipping Pte Ltd. such other and further relief which it may deem just and proper.

Dated: New York, New York
       May 23, 2008

                               HOLLAND & KNIGHT LLP

By:    _____
                               James H. Power
                               Lissa D. Schaupp
                               195 Broadway
                               New York, NY 10007-3189
                               Tel:    (212) 513-3200
                               Fax:    (212) 385-9010

                               *Attorneys for Plaintiff*
                               *Glory Wealth Shipping Pte Ltd.*

## VERIFICATION

STATE OF NEW YORK            )
                                                   :ss.:
COUNTY OF NEW YORK        )

JAMES H. POWER, being duly sworn, deposes and says:

I am senior counsel with the firm of Holland & Knight LLP, counsel for Glory Wealth

Shipping Pte Ltd. ("Glory"), plaintiff in the foregoing action. I have read the foregoing Verified

Complaint and know the contents thereof, and the same are true and correct to the best of my

knowledge. I have reviewed documentation provided to me by Glory and corresponded with

Glory's representatives regarding this matter. I am authorized by Glory to make this verification,

and the reason for my making it as opposed to an officer or director of Glory is that there are

none within the jurisdiction of this Honorable Court.

_____
                    James H. Power

Sworn to before me this
23rd day of May, 2008

_____
Notary Public

Linda M. Wilkens
Notary Public, State of New York
No. 01WI9672455
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 30, 2010 ____

# 5351504_v1

9